1818-90, when councillor Reddy, Ms. Wren, good to have you here Ms. Wren. May it please the court. My name is Nina Wren and I represent Dr. Walton Campbell, the plaintiff appellant. Fundamentally, Dr. Campbell's case belongs to the jury. The starkest support is the Department of Defense's total exoneration of Dr. Campbell, which is significant for two reasons. First, the Department of Defense Administrative Judge, who was obliged to resolve all doubt against Dr. Campbell, determined that it was clearly consistent with national security to restore his parents. Second, Dr. Campbell's managers and the Dome Administrative Judge had materially the same information available to them, i.e. the applicable security policies and regulations, their knowledge of Dr. Campbell's work location and duties, and Dr. Campbell's own explanations, but reached the polar opposite conclusions. While the Doha Administrative Judge concluded that Dr. Campbell posed no threat to national security, Dr. Campbell's managers concluded that he posed a unique threat. Based on the record evidence, Dr. Campbell was entitled to reasonable inferences that the Army's decision was contextual. Thus, this court should reverse the district court's grant of summary judgment on his Title VII and age discrimination claim. And what you're asking us to say is that what was contextual is that he posed a unique national security interest. What was contextual was the fact that they could have given him non-classified duties, but rather... I was repeating what you just... I literally was just repeating what you said. You said that his managers concluded he posed a unique national security interest, and that he was entitled to inferences that that was pretextual. I'm just trying to make sure I understand what your argument is, is that that, in the sentence you just gave, was the conclusion that he posed a unique national security interest. So, in the proposal to indefinitely suspend Dr. Campbell and the district to indefinitely suspend Dr. Campbell, they identified several reasons for that Dr. Campbell's behavior that they viewed to be problematic. Our allegation, or our contention, is that the record evidence shows that that was pretextual. That their belief that Dr. Campbell committed those acts was pretext for discrimination and retaliation. And when you talk about just... And then I will turn back. I apologize. I just want to make sure I understand the argument. When you're referring to the reasons that they gave, at least the contemporaneous reasons they gave, this is the May 27, 2005 memorandum by Robert Burkhart. Correct. Thank you. I just want to make sure I understood what we were talking about. Yes, that's right. And regarding the Whistleblower Protection Act claim, the Supreme Court has made abundantly clear, unless specified by Congress, administrative exhaustion is not jurisdictional. Instead, it is an affirmative defense, and the Army has failed to provide a single shred of evidence to support its contention that Dr. Campbell didn't adequately exhaust his administrative remedies. In fact, the Army itself cited to the EEOC administrative judge's decision, which did reference Dr. Campbell's whistleblowing allegations. And the Army failed to cite to any other relevant document. In contrast, Dr. Campbell raised the indefinite unpaid suspension in the EEOC process, which was all he was required to do. The district court disagreed with that and gave its reasoning for that. The district court didn't expressly provide a reason, but did dismiss Dr. Campbell's Whistleblower Protection Act claim for failure to administratively exhaust. And so tell us just really succinctly how he administratively exhausted that claim. All Dr. Campbell was required to do while he was pro se during the EEOC process was to raise the personnel action that was at issue, and he did that. Our contention is based on the record evidence, he has sufficiently raised his... When you say the personnel action, so he doesn't need to say anything other than, I got fired, I shouldn't have. And that's sufficient to preserve and exhaust Whistleblower Protection Act claims, Title VII claims, any kind of ADA claims. Just by raising the personnel action, that's sufficient. He didn't have to articulate the Whistleblower Protection, age, gender, any of those things. Just raise the personnel action. Especially for a pro se complainant at the time, there's no requirement for a legal... We have to liberally construe the complaint like a prisoner? That's correct. Is his EEOC complaint in the record here? No, it is not in the record below. Why is that? It is the Army's burden to demonstrate that Dr. Campbell didn't adequately administrate... But he filed it, didn't he? Can you repeat that, sir? He filed it, didn't he? He filed his EEOC complaint. Yes, Dr. Campbell filed his own EEOC complaint. And it's not in the record? And it's not in the record, Your Honor. We don't know what it says. The district court did not know what it said. We don't know what it said. True. We're on appeal. We don't know what it said. Okay. But nevertheless, the burden was on the Army to show that Dr. Campbell did not administrate exhaust and they could not satisfy that burden. However, I do want to point... He didn't raise a claim before the Merit System Protection Board in that regard. And there's no proof he raised it up through the EEOC. He did raise it through the EEOC because the EEOC administrative judge was evaluating the indefinite suspension, which was the otherwise killable act that could have gone to the MSPB. So how does that exhaust his Whistleblower Protection Act? He is not required to provide a legal theory when he is pro se filing an EEOC complaint. As a federal employee, he had the ability to either choose the EEOC route or the MSPB route with the adverse action that he had at the time. So the fact that he raised his adverse action to the EEOC route was sufficient for him to... I'm raising an ADEA claim, an age discrimination claim, because I got fired. The action there being fired, your position is that adequately exhausts, because we liberally construe his complaint, that adequately exhausts a whistleblower claim as well. During the process, he... You didn't answer the question. Let's start answering. No answer. I... Yes, and also he said that it was an incorrect decision. Right? I think the fact that... Right. Incorrect, meaning incorrect, he shouldn't have been fired. Right. And that in your mind is adequate to preserve a whistleblower claim. And understand that that's the position you've got to make, because that's the facts that you've got, right? Yes. And in bonds, that's what the court held as well. So, in bonds, the plaintiff was pro se. She went through the EEOC process as well. And on appeal to the Fourth Circuit, this court held that she adequately exhausted her Whistleblower Protection Act claim, in addition to her EEO. And what's your site? That's... What's your case? That was Bonds v. Levitt. Okay. Can you come back to, if you would for a minute, where we started? Your sort of argument here, in essence, is that the reasons given by Mr. Burkhart in this May 2005 are pretextual. And we know that based on the subsequent findings of the administrative judge. Why are all of those... Why are we allowed to even do that? In light of Egan. Those are the reasons given for revoking his security clearance. They're the same reasons that are given for not allowing him to return to any duty station. And Egan seems to tell us that you don't get to do that, even if after the fact you're proven correct. This court, maybe an administrative judge does, but this court doesn't get to evaluate the validity of the national security threat that your client posed. Egan expressly allows for assessment of whether or not non-classified duties could be provided, or reassignment to a non-sensitive position. So basically... It could, but not where the very reasons for revoking the classified, the security clearance, are the same reasons given for why your client was a danger in any position. I mean, I read Burkhart's order as saying, your client poses a national security risk wherever he is in the building. It makes no difference, because he's trying to record and transmit classified information, and we can't have him in the building. And the reasons we can't have him in the building are the exact same ones that he can't have a security clearance. And so where those two are the same, I don't believe Egan permits that. What I want to understand is why we're allowed to say, you know, I think you agree, we can't question the revocal of national security based on these reasons. I hope you accept that. But what I don't understand is why we can attack those very same reasons  why your client poses a national security risk. Because the security clearance process is concerned with classified information. That's where the national security risk comes in. The classified information, exposure of the classified information, endangers national security. So we're not questioning any of that. He, Dr. Campbell, is in a non-restricted area. His cubicle was not in a restricted area. But national security is not limited to that, right? I mean, your guys engage in, I understand they later find him, but at least allegedly engage in very serious misconduct that the determination is made that those reasons mean he can't even be in the building. Because we can't trust him to stay in non-classified areas. We can't trust him at all. But if those reasons are the same for denying his security clearance, I don't see how Egan permits us to review those at all. Because fundamentally, we're not questioning the fact that there was a security investigation into the allegations against him. You're just questioning the reasons behind it. The reasons for providing him non-classified information. So, Dr., Mr. Burkhardt's reasons and Mr. Hardwick's reasons for preventing him from going to a non-sensitive position or putting him somewhere without non-classified duties, none of that touches upon what Egan was talking about, or security clearance. Even if you get past the Egan inquiry, if you look at our case law, Jamil and others, it says we can review if there is a clear statutory regulatory obligation to place someone in another position, a non-security position. And in Burkhardt's letter, he goes into extensive detail to say we don't have any of this. And I don't see any evidence from your client to the contrary. We have the historical practice of the Army at that time, 19 years where they did reassign or give non-classified duties to employees. And Burkhardt went through all of those and showed why every one of those was not applicable here and why your client was materially different. Even in the instances where the commander recommended that the employee had a security clearance, and TCF ultimately overturned them and said, no, we're not going to grant a clearance, they gave that employee non-sensitive, non-classified duties, which is why this inquiry belongs to... So tell us where in the appendix we find your rebuttal for Burkhardt's discussion, particularly on JA-229, as to why that's not accurate. In the joint appendix on pages 238 through 241, specifically number six, individual number six, is the example of an instance where the commander recommended that the employee get a security clearance, and TCF disagreed. But that's not responsive to his question. What he's asking is, what's the rebuttal to the facts that Burkhardt relies upon? What's the rebuttal to the fact that you entered a restricted area? The rebuttal, I mean, he goes through and says, in subsection E, that reconsideration for an unclassified position, and then he says, goes through and gives the reasons why your guy, what he ultimately concludes, is retention in any duty status would be detrimental to national security interests. And he gives a list of reasons, five of them, why your guy is. And I took Judge Agee's question to be, where in the record was your rebuttal of those five reasons, which happened to be the same reasons that your client's national security clearance was revoked? The evidence begins around joint appendix page 155, where you see the ERDC standard operating procedure identifying which buildings are restricted and which are not. Dr. Campbell's building was not restricted, and his cubicle area was not restricted. And then you have the policy memorandum of January 13, 2003, which is also referenced in joint appendix pages 377 through 78. You have Mr. Burkhardt's personal electronics devices memorandum that he signed off on, and that's located on joint appendix page 310. In the record as well, there's... Let me ask you, you're already over. Let me ask one last question, very specifically. On JA 229, Burkhardt determines, this is where I want to know, where is this rebutted in the record? Commander of the ERDC has never recommended that any clearance be revoked until your case. In all cases, all cases that you referred to, not one of the employees took any over action that could have compromised classified information. None of the employees were suspended without pay pending CCF determination. Where is there a rebuttal to those findings? To the finding that this was... The ones I just read you. That's not rebutted, but our contention is there were reasonable inferences that a jury could conclude that their rationale, their provision of that as a reason for Colonel Rowland's recommendation is pretext. But that brings you right back to where you started with Judge Richardson, where you're challenging pretext on the basis of the national security determination. When it's non-classified duties, it doesn't involve... The purpose of providing non-classified duties is to remove risk to national security. Otherwise, it would be classified duties. You have some time reserved. That stop sign has been up there for a while. Thank you. We'll hear from the government and then you get a rebuttal. Mr. Jansen. Good morning. Tell us what you think about that. May it please the court. So, there are four relevant questions for the court from the Army's point of view. The first question is Egan. The second question is whether Dr. Campbell properly exhausted his Whistleblower Protection Act remedies. And then the last two questions relate to whether the district court properly granted judgment on the retaliation claims and the discrimination claims under the ADEA in Title VII. So, I'll turn first to Egan because that is a jurisdictional question. And here... Before you get to it, I very much want to hear. If you prevail on Egan, do we have to answer any of the remaining questions? No, you don't because it's a jurisdictional question. You would not... It would not be appropriate to, you know, go into the summary judgment standard for the retaliation issues or the summary judgment issues for the discrimination claims. If you prevail on Egan, we don't have to review what Judge Hilton did on the other stuff. No, in fact, it would be inappropriate to do because those decisions of reviewing whether... That's what you're saying. This ought to be dismissed under Egan. Exactly. That's the number one position of the government. Exactly. It should be dismissed under Egan and if it's dismissed under Egan under jurisdictional issues, for this express reason that you should not be second-guessing the national security concerns, you should not then be going into the analysis of whether those national security concerns... You're saying that the Supreme Court took care of this several years ago. That is correct. So, the Army here... Before you get to Egan, can I ask one more question about that? Of course. Is that necessarily true of the retaliation claim? And I understand you have other arguments on the retaliation claim, but could you... Does Egan necessarily resolve the retaliation claim? Because, in theory, the retaliation claim could be independent of the reasons given for the security clearance replication. Do you understand what I'm saying? Not quite, because my interpretation of the facts of this case and the allegation for the retaliation claim are that he's arguing that the reasons cited by Mr. Burkhardt were pretextual, such as the national security concerns, and that the real reason he took that action is as retaliation for raising the potential for bringing an EEOC claim five days before. So, in essence, it's still the national security concerns that you have to question. Let me ask you a theoretical question on the application of Egan. Would you agree that if, for instance, and there does not appear to be here, if there were an Army regulation, for example, that said if we discharge, discipline, or suspend an employee for security reasons with regard to their security clearance, then we will place that employee in a non-secure position pending the resolution or something to that effect? If you had a regulation that said that, that would be an exception to Egan. That's entirely correct, Your Honor, and I think that's consistent with this court's decision in Geo where, under the Rehabilitation Act, if an individual was so qualified, you would have to transfer to a non-sense position. The individual in Geo was not qualified to Egan-borne the claim, but if he were, you would have had to consider that. As the panel noted in the opening argument, in this particular case... Why does Geo apply? Because that's a reasonable accommodation in an ADA context. Title VII doesn't have, to my knowledge, a reasonable accommodation requirement. Why do we think Geo applies here? So it is a little bit different. I will acknowledge that, Your Honor. The point that I was trying to make with Geo is that in certain circumstances where there is a regulatory statutory directive to consider a transfer to a non-sense position, that would be a more specific grant where you could consider whether a transfer to a non-sense position is possible. In this particular case, there is no such regulatory or statutory scheme that would instruct the Army to consider a transfer to a non-sense position, and in that particular case, where there is no such specific statutory or regulatory grant, you would look to this court's decision in Bracera to sort of understand whether a claim would be Egan-Barr, and in Bracera, this court made clear that if your claim is predicated on challenging the reasons underlying a security clearance decision, then that claim would be Egan-Barr. Well, your opposing counsel, I think, makes an argument that notwithstanding the absence of any regulation or statute, that there was some sort of a de facto practice or policy of putting folks in some other position while they were undergoing an administrative determination. What's your response to that? So I would argue that still does not overcome Egan, and it's not the type of regulatory or statutory directive that would allow the court to set, yes, the reasons underlying a security clearance decision. Why does it not come over? I mean, I understand, but you say, that does not overcome Egan, but why? What about that argument does not overcome Egan? Is it because it's premised on challenging the reasons Burkhardt gave? That's correct, Your Honor, because as this court noted in Bracera, if the challenge is based on the reasons underlying a security clearance decision,  and here you can see that the reasons for Dr. Campbell's access to classified information are very similar to the reasons underlying Mr. Burkhardt's decision to place Dr. Campbell under unpaid suspension. So if you were to ever get to the pretext inquiry stage of a Title VII or ADA claim, or with respect to WPA, whether they would have taken the same action, you can never answer that question without second-guessing the reasons underlying the security clearance decision. How would you have us distinguish those two sets of cases? The set of cases where the challenge necessarily depends upon the reasons for suspending the security clearance versus we could imagine a scenario where the decision to suspend this individual was based on wholly separate reasons, that this person wasn't a very good worker and had been late to work a couple of times and whatever else they were, but unrelated to the reason. So if Rowan's rationale and Burkhardt's rationale were different, I presume you agree that wouldn't be Egan-barred. I do agree with that. But how do we distinguish how different they need to be or what would you propose for us to look at as a principle to distinguish those two cases? I think the principled difference between those cases is what this Court articulated in Bercera, which is Bercera obviously dealt with the question of foreclosing a challenge to the initiation of a security clearance investigation. And what the Court of Bercera held is that you cannot challenge the initiation of a security clearance investigation because doing so would in essence be challenging the reasons that underlie the security clearance decision itself. So the distinguishing line that you would have to draw is whether or not the reasons underlying the adverse action are the same as the ones encompassing the security clearance. And you used the phrase there that the initiation in essence is challenging the reasons. That seems to be the term that matters. Is the right phrase there in essence does that or does Bercera require that it be necessarily challenging the same reasons? Is there a distinction between those in your mind? So the language in Bercera, and I'm sure I was inartful in sort of summarizing it, is it found that the reasons why a security clearance investigation is initiated may very well be the same reasons why this final security clearance decision is made. So it's not sort of an exact science is what I would say. At least based on this Court's articulation in Bercera. So you all are saying this Egan principle is essentially sacred? Yes, I believe it is. I mean, it's good law. It's sort of like absolute immunity. It's a non-reviewability doctrine that entrusts the decision to the executive branch because the executive branch has the expertise with respect to security matters and national security. So it does take it out of the hands of the Court and put it in the executive branch. The separation of powers concept. Exactly, that's what the Supreme Court articulated in Egan itself. So I'd like to briefly address some of the arguments that my colleague raised with respect to Egan. My colleague raised that he received his security clearance back. I would argue that is not important for Egan because as Bercera makes clear, Egan applies to all aspects of the security clearance review. And then second, the Egan decision itself makes clear that national security concerns involve predictive judgment. So you could very well imagine a scenario in which the predictive judgment to suspend a security clearance may be different than what it takes to actually get it back after two and a half years. So I think that is a distinction of value difference that he actually received his security clearance back. To address the Whistleblower Protection Act argument, I would first like to say, turning to that, here the Army's argument is that a party must administratively exhaust the Whistleblower Protection Act argument through either the EEOC or MSPB, and Dr. Campbell never put any evidence that he did so. Here on the motion to dismiss, the Army put into evidence the EEOC decision, summarizing Dr. Campbell's claims, which make no mention of the Whistleblower Protection Act argument, and Dr. Campbell has never claimed that he mentioned that. So they said your colleague's response was, you didn't put in the EEOC complaint. Your response to that is, we put in the decision, and the decision addresses the claims raised, and that's enough to meet our burden. And had they wished to rebut that by saying, no, no, no, we included it in the complaint, the court just, or the EEOC, not the court, just missed it, that they could have done that, and they did not, and you presume because they could not. Absolutely, Your Honor, because, you know, we put that in the very first motion to dismiss. Our argument has been consistent throughout the process. So if they wanted to put that in their opposition to our motion to dismiss, they could have. And the reason we put that in, just the decision itself in, is because Dr. Campbell amended his complaint many times, so it's simply easier to put in the EEOC decision to summarize exactly what his final claims are, rather than ones that were withdrawn, or, you know, included once or included later. I would also just briefly respond to Dr. Campbell's assertion that he was pro se throughout this process, so you should somehow liberally conclude that complaint. I think you'll see from the record that Dr. Campbell was represented during this process, and he amended his complaint multiple times. You can see that. You're saying he wasn't pro se. No, you can see that, you know, for example, from Joint Appendix 404. Did lawyers sign these papers? I don't know about the initial one, but the lawyer amended it. Why don't you know about the initial one? I don't recall. Okay. It may be. We don't either because you didn't put it in the record. That's true, Your Honor, because we put it in. Well, I guess if we ask you for it, you all could put it in. We could. Absolutely, Your Honor. So there are all these amended complaints before the EEOC that were done by his counsel? Correct, Your Honor. And so those are in the record? No. None of that's in the record. Correct, Your Honor. All right. I understand where you're coming from. But I would just say that he was represented, you know, at some point in the EEOC complaint. In the record, you can see that because you see that his lawyer is questioning witnesses during the administrative process. So I'd just like to make that point clear. I assume you would say, if the pro se or otherwise, if your complaint to the EEOC says, I was fired and this was wrong, that that's insufficient to derive an Equal Support Protection Act claim based on that assertion. Yes, I would entirely agree with that. And I think our points in support of that are well explained in the brief, but I'd just briefly like to emphasize two reasons why I think that has to be true. The first is that if you were to allow a plaintiff to bring a whistleblower claim for the first time in district court without getting an administrative decision on that, that doesn't make sense in light of the standard by which Whistleblower Protection Act claims are reviewed. Whistleblower Protection Act claims are set aside only if the agency action is arbitrary, capricious, and abuse of discretion. And the EEOC decision is in the record? The EEOC decision is in the record. And it doesn't have anything in it about a Whistleblower Protection Act claim? Correct. It does not mention the Whistleblower Protection Act claim. So there would be nothing for the court to conduct an arbitrary and capricious review or a lack of substantial evidence review for a Whistleblower Protection Act claim without actually an analysis of a Whistleblower Protection Act claim below. I would also note that if you were to allow a plaintiff to bring a Whistleblower Protection Act claim for the first time in district court, plaintiffs would always be disincentivized to exhaust their remedies in a mixed case because they would be able to avoid a deferential standard of review in district court by simply bringing it for the first time in district court. So is it your position that EGAN covers the Whistleblower Protection Act claim or that it's simply not exhausted so there's no jurisdiction to hear it? Both, Your Honor. EGAN would cover the Whistleblower Protection Act claim because, as counsel mentioned, it's predicated on questioning the reasons underlying his suspension of a Whistleblower Protection Act claim. But the failure to exhaust would be a jurisdictional bar? Yes, I believe it would be a jurisdictional bar, Your Honor. To address counsel's argument that Bonds v. Levitt addresses whether a Whistleblower Protection Act claim must be identified administratively, I would submit that it does not stand for that proposition. Instead, Bonds v. Levitt stands for the simple proposition that to exhaust your administrative remedies, you need not bring your administrative claim to both the EEOC or the MSPB, which is not a dispute here. We say you have to bring it to one or the other, or in certain circumstances, you can exhaust through other remedies such as the Office of Special Counsel. But in any event, you have to exhaust in some way. Bonds v. Levitt does not exhaust the failure to exhaust at all. Turning to the Title VII and 80EA discrimination claims, the Army maintains that the District Court was correct in granting judgment to the Army on those claims to the extent you disagree with us on EGAN. Here, the District Court properly found that Dr. Kimball could not establish a crime of evasion case because he did not provide direct evidence of discrimination, nor did he present evidence of comeritors. Furthermore, the District Court was correct in finding that the non-discriminatory reasons for Dr. Kimball's suspension would not be textual. The first argument that Dr. Kimball raises in his brief... He was correct in resolving them, but he shouldn't have reached them. That's exactly right, Your Honor. He should not have reached this, but if you were to disagree... So he was wrong to reach them. He was wrong to conduct the analysis, but he happened to do the analysis right. Yes, Your Honor. So the first argument that Dr. Kimball raises as to why the District Court erred is he argues that the District Court erred in considering the crime of evasion case on summary judgment where evidence of true motive was presented. Here, I would just observe that this Court routinely conserves each step of the McDonald-Douglas framework. For example, in Hill v. Lockheed, an en banc decision of this Court, this Court affirmed a grant of summary judgment where the plaintiff had failed to establish a crime of evasion case. But then went on to say that even assuming the plaintiff had established a crime of evasion case, the Court concluded that the employee failed to prove pretext. So there are other examples cited in the brief, but I think that Dr. Kimball is incorrect in stating that the District Court committed a legal error in its analysis of Title VII of the ADA claims. Turning to the... Dr. Kimball also argues that the District Court erred when concluding when applied to comparative evidence. Here, I would observe that Dr. Kimball has not put forth any evidence that Mr. Burkhart supervised some of the other individuals that Dr. Kimball points to. And in any event, I would say that the District Court properly concluded that none of the other individuals engaged in similar conduct as Dr. Kimball, which means that even if you were to disregard a supervisory requirement, which I do not believe you should do, this would still be a case where there was lack of comparative evidence. As to the pretext argument that Dr. Kimball sets forth in his brief, I would argue that none of the evidence presented by Dr. Kimball comes close to establishing pretext. I'll simply refer to the Army's brief on this issue. But what I would emphasize is that, you know, for the reasons stated in the brief, much of the evidence that Dr. Kimball puts forth is either misquoted or misinterpreted testimony or misinterpreted emails for things like the next email is left off or deposition testimony where answers are changed from a no to a yes. Lastly, turning to the Title VII retaliation claims, the final argument that Dr. Kimball advances is that the District Court erred in granting sovereign judgment on retaliation claims. Here, I believe the arguments are again well-explained in the brief, so I'll simply refer to that for much of the argument.  Here, I would say that even if you were to agree with Dr. Kimball that some different standard applies, that is not relevant to this particular case for several reasons. First, is Egan still deprives this Court of Jurisdiction and the District Court of Jurisdiction? And second, under the facts of this case, as analyzed by the District Court, it does not matter whether a lesser standard such as a motivating factor standard would apply because the District Court properly found that no reasonable jury could find that retaliatory animus played any role in the decision to suspend Dr. Kimball without pay. The legal reasons supporting the above four causation standard are well-articulated. Is there any, just one last question, is there anything in the record, I'm not asking you to go beyond the record, about the national security carve-out in 2000 E2G that carves out review of national security determinations? That was not raised by the government as I understand it. Is there anything in the record, I'm asking you to go beyond the record, as to why that was not raised? No, that was not raised by either party. I see I have about 30 seconds left. Unless there are questions, I'll simply yield the remainder of my time. Thank you very much. Thank you. Appreciate it. Ms. Rand? Thank you, Your Honor. I'll start with addressing the Egan issue that Army raised and discussed in their oral argument. In Egan, the plaintiff did not have access to non-classified positions, period. The department that he was working with just did not have non-classified positions available. I think that is important here because Army plainly had non-sensitive positions, non-classified duties that they could have given Dr. Kimball. Why do you say the Department of Navy in Egan, so the department there is Navy, your department is Army. Why do we think that the Army has unclassified positions but the Navy doesn't? I assume the Navy has lots of unclassified positions. In Egan, the court specifically found that in the department that the plaintiff was located in, there was no place that he could have been reassigned. So the only inquiry could have been regarding whether or not his security clearance was wrongfully revoked. Here, that's not the inquiry. While Egan was talking about access to classified information, and the impact on national security here, we're talking about access to non-classified information or non-sensitive positions. I think the clearest example is that even when the Army CCF determined that this person was too much of a risk to have a security clearance, the Army reassigned that individual to a non-sensitive position. And I think that's probably the clearest example here of what the Army could have done in Dr. Campbell's case. That they could have done it, I don't think helps you any. You have to establish a definitive obligation for them to have done so. That could be established through their prior practice of always having provided that opportunity, and Dr. Campbell was the first. And what case says that prior practice is the equivalent of a statutory or regulatory obligation? I think because we're looking at the pretext analysis, that the correct cases to look towards would be the standard Title VII, McDonnell-Douglas analysis of pretext in this instance. Well, pretext is different, though, from whether or not there's an obligation under Jameel in the related cases to make a transfer to another position. And I think the burden is upon the employee to show that there is an obligation to do that. And here it seems like to me the most you have is some facto evidence that it may have happened before, and we went through in the earlier argument all the reasons that Burkhart gave as to why that was not applicable. I think you conceded that there was no rebuttal for what he set out in his letter. I did not say there's no rebuttal for what he set out in his letter, so I don't want to clarify. The specific allegations that Mr. Burkhart described in his letter are rebutted by the record evidence. So, for example, Mr. Burkhart's allegation that he attempted recording, attempted to record in a restricted area. Now, what I read to you was that the commander of the ERDC has never recommended that any clearance be revoked until your case. That specifically is correct. That's not rebutted? Yes. And in all cases, not one of the employees took an overt action that could have compromised classified information. That's not rebutted? That, I think, is a jury question as to whether or not these other... Yeah, but you've got to come up with some kind of proffer of evidence. You just can't say it's a jury question. You have an obligation to show something. That's right. And what we've shown is that if you look at the chronology of what had occurred, these allegations were made against Dr. Campbell. They were aware of the most serious allegations, his managers were aware, by or around March 14, 2005. Dr. Campbell continued to perform non-classified duties for over a month. Right, but that's not really to the point. The point is that Burkhardt in his letter recites this is one of several factors that not one of the employees that you pose as being somehow similarly situated. Not one took any overt action that could have compromised classified information. That's not rebutted in your case. The fact that there were certain circumstances that Mr. Burkhardt was referring to in the list of comparators that he was provided, where CCF said this person cannot have a security clearance because it is not clearly consistent with national security for this person to possess the clearance and work on classified information. The fact that that employee was still reassigned to a non-sensitive position I think undercuts... But the reasons matter, right? If you get your security clearance revoked for a DUI, that is different than if you get your security clearance revoked because you're selling classified information to a foreign country, right? You don't compare those two as if they're the same merely because they result in the same outcome. But in terms of... The Army never said that you were too dangerous to work on non-classified duties. They said that we didn't have non-classified duties. That's precisely the opposite of what they say. At JA231, after going through and describing why we're not going to put you in a vacant unclassified position, this is subsection E, right? They say under these circumstances, your retention would be detrimental to national security interests. Your retention in duty status, not in a classified position, that's already been revoked. This is only about reassignment. And they say, no, no, no, for the exact same reasons, it would be against national security interests. But that's undermined by the fact that they made a pro forma attempt to look for another position. The email that was sent to Dr. Fontanella where he says, where the HR specialist says, do you have any positions available? The fact that he was, Dr. Campbell was performing non-classified duties even after they knew the most serious allegations against him for over a month. All that service. But that's, your point is that's undercut. Your point is that these reasons given were pretextual. And the question under EGAN, and I understand you disagree with it, is whether we get to look behind these reasons at all. And you think we should look behind them. EGAN cares about access to classified information. What we are talking about here is access to non-classified information. And the last, I see that my time is up. So my last point is, the relief we're looking at here isn't getting his clearance back, isn't anything to do with the security investigation, but rather pay for, you know, back pay for the period of time that he could have performed non-classified duties. Thank you very much, Ms. Graham. We'll, we appreciate both your arguments, your work. We're going to come down and greet counsel and then take a short break. And then come back to a final case. This honorable will take a brief recess.
judges: Robert B. King, G. Steven Agee, Julius N. Richardson